First case on our docket this morning is Agenda No. 5, No. 128428 People of the State of Illinois v. Miguel Webster Counsel, are you ready to proceed? Thank you, Your Honor. Counsel May it please the Court, I'm Assistant Attorney General Eric Levin on behalf of the people of the State of Illinois. The appellate court erred in invoking Rule 366A to reverse defendant's sentence and remand for resentencing without first finding any error or abuse of discretion in the sentence. That was improper because Rule 366A applies to civil appeals, not to criminal appeals. And under the relevant rule that Counsel, has this Court applied it to criminal appeals in the past? The Court has on a handful of occasions invoked Rule 366A in criminal appeals. It has later explained that essentially it was looking to Rule 366A to fill ambiguities or gaps in Rule 615, but that ultimately that power must arrive in a criminal appeal from Rule 316. And it's never applied Rule 366A in a criminal appeal in a way that would allow a reviewing court a power that Rule 615 itself forbids. And this Court's precedent interpreting Rule 615 is very clear and well established. And the Court's repeatedly held that under that rule, a reviewing court may only disturb a sentence on appeal if that sentence is unlawful or results from an abuse of discretion. So what is our standard of review here and is that impacted by which rule applies? Well, the standard, I think I would answer that question this way. The standard of review in terms of did the appellate court err in invoking Rule 366A and in purporting to reverse a sentence without finding error, whether that was proper or not is a matter of de novo review. Because that essentially calls for this Court to interpret the appropriate this Court's appropriate rules, 615 versus 366. And I think on this point, the defendant, as I read the defendant's brief, is not really contesting the fact that the appellate court, the reliance that the appellate court placed on Rule 366A was misplaced. And I understand the defendant to essentially agree that the appropriate rule to apply is 615B, and that under that rule, an appellate court can only disturb a sentence if there was an error or an abuse of discretion. So the defendant isn't suggesting an abuse of discretion standard of review? Well, I mean, I don't want to speak too much for the defendant here, and I'm sure my opposing colleague can answer that question. I would say that, and I think this sort of does dovetail into the next argument I would like to discuss, which is that the way I read the defendant's brief at this point, what he's arguing is that the appellate court did, in fact, find an error or an abuse of discretion. And so, again, I think that, too, would be reviewed de novo, whether the appellate court did, in fact, find an error. Or not whether – not only whether it found an error, but whether there was an error or an abuse of discretion in the sentence. This Court wouldn't owe any deference to the appellate court's determination on that fact. When the Court's reviewing whether the trial court abuses discretion, that aspect is entitled to great deference. When this Court's reviewing a trial court's sentencing decision, it extends great deference to that decision. And as the Court's – this Court's cases have made clear, this Court will find an abuse of discretion in a sentencing decision only if that sentence is manifestly disproportionate to the seriousness of the offense and all of the other surrounding circumstances. And here, it's simply not the case that the sentence here, this 40-year sentence, was an abuse of discretion. As the trial court itself recognized, this was a very serious offense. The defendant here, who was at the time just two months shy of his 18th birthday, shot a 15-year-old boy twice in the face with a – with a shotgun from about two to three feet away. The victim's hand was – arm was raised in a defensive posture at the time. He was not a threat to the defendant. The defendant then dragged the victim's body down an alley, dumped it in front of a neighbor's garage, and engaged in, you know, fairly substantial efforts to try to clean up the crime scene. And the appellate court – or the trial court, excuse me, recognized that, yes, there was a lack of maturity there. I think the court's – the trial court's phrasing was certainly there was a lack of maturity. But the court also recognized particularly those actions afterwards were of an aggravating nature. And while the trial court didn't put it in these terms, I think those actions themselves suggest a degree of maturity on the defendant's part, who, again, was – he was a minor, but he was just two months shy of his 18th birthday at the time. And so, again, the trial court weighing all – and the trial court made clear it weighed all of the aggravating and mitigating factors. The defendant here does not argue that the trial court overlooked any relevant factor, that the trial court misapplied any relevant factor, that the trial court, you know, improperly applied a factor. This is simply a matter of asking this court to re-weigh those factors and to reach a different sentencing decision. But that's – that's just not the way this court generally applies an abuse of discretion standard. I think, again, the other – some other important points to make here. The appellate court and the defendant seem to put a lot of weight on what they view as the – the trial court having found, quote, significant rehabilitative potential for a defendant. But, I mean, if you go back and look at what the trial court said, the trial court judge simply did not make any such finding along those lines. At most, what the trial court said was that the 40-year sentence was appropriate because it would allow for the defendant to be released at age 57, which the trial court then recognized would be young enough to have been rehabilitated and go on with his life, which is exactly what this court later said in People v. Buffer, when it recognized that sentences of 40 years or less imposed on juvenile offenders do not amount to de facto life sentences because they do provide some meaningful opportunity for release. I think it's also important to recognize here on the question of rehabilitative potential, what we do have in the record is that the evidence that five years after the shooting, when at this point the defendant is 23 years old and he was awaiting trial in the county jail, he took part in a serious jailhouse brawl, a violent brawl, and the trial court did not make any such finding. And again, the trial court never purported to make any such finding, but I think when you're assessing rehabilitative potential, I think any reviewing court like a trial court has to take that into account because that's very strong evidence of what defendant is doing even five years later. Again, there was also defendant and the appellate court put a lot of emphasis on the trial court statements that defendant was, quote, in school and, quote, doing things with his life. I think it's, again, important to recognize the evidence that the trial court here was referring to when it made those statements. And what the pre-sentence investigation report showed was that the defendant had dropped out of high school, enrolled in GED classes, but attended only one class before the shooting took place, and that he was working a part-time job. So while in a sense it's true that he was, quote, in school and doing certain things with his life, again, I don't think that evidence is in any way suggestive of the significant rehabilitative potential that the appellate court and defendant are now trying to suggest that the trial court supposedly found. Again, I think it's important to look at what the appellate court said it was doing. In the appellate court, the defendant argued that his sentence was unconstitutional under the Eighth Amendment because it was a, quote, de facto life sentence. And this the appellate court rejected that claim. It recognized that under People v. Buffer, this Court held that a sentence of 40 years or less imposed on a juvenile offender is not a de facto life sentence. And again, I read the defendant as essentially now agreeing that the appellate court correctly rejected that claim. The appellate court then went on to credit the trial court for taking great care in imposing this sentence, for holding a lengthy sentence in hearing, explaining why it was not imposing the firearm enhancement and why it imposed the sentence that it did. It acknowledged that the trial court considered defendant's age and the attendant characteristics of his age. And then the appellate court went on to say that it thought, quote, fairness warranted giving the trial court another chance to consider whether this was the sentence that it intended to impose. Did the trial court state why it was not imposing the firearm enhancement? It did. And it recognized, and I think this is important, and this is sort of towards the end of the trial court's discussion of the sentence, when it says that it's determined that a 40-year sentence is the appropriate sentence, and it then explains that that would mean that the defendant would be released from prison at age 57 when he would be young enough to have been rehabilitated and to go on with his life. And the court then explains that that's the reason why it didn't impose the firearm enhancement. I think it talked a little bit earlier about recognizing that there was a lack of maturity there, and it mentioned that that was a reason why it found the firearm enhancement was not appropriate. But it also recognized that it wanted to give the defendant a chance to have some meaningful opportunity for release, and so that's why it didn't impose the firearm enhancement. And that's exactly what this Court later said in People v. Buffer. So while it's true that the trial court didn't have the benefit of People v. Buffer when it was imposing the sentence, all of the reasons it gave essentially presaged what this Court would later say in People v. Buffer. So there's really no reason to think, and I think this goes a little bit more to the defendant's request for this Court to order supervisory relief, there's really no reason to think from what the trial court said that it would have determined that any different sentence was appropriate even if Buffer had been decided already. But all of the reasons it gave were fully consistent with what this Court later said in People v. Buffer. Is it appropriate for the appellate court to look at Buffer and kind of Monday morning quarterback the sentence in this case and say, well, we think that you ought to think about that, or we think that you would have done something different had you had the benefit of this case? Is that appropriate? No. I think that was inappropriate, Your Honor. And again, I think it's important to, if you look at the cases defendant cites in his brief, there's a handful of cases where trial courts before Buffer imposed sentences greater than 40 years. So they didn't know at the time that they were imposing a de facto life sentence, but they did. And in those cases, the appellate court reversed and remanded for resentencing in light of Buffer because the trial court didn't know when it was imposing the de facto life sentence. And at the time, under this Court's rule in People v. Holman, certain findings were necessary before a de facto life sentence could be imposed. But here the trial court did not impose a de facto life sentence. So Buffer in no way suggests, in no way upsets the trial court sentence. It doesn't create any error in the sentence. And there's no reason to think that the trial court would have imposed a different sentence if it had had the benefit of Buffer. The trial court was... Of course, they're saying, well, the trial court didn't realize how close it was to a de facto life sentence. And had the trial court known that, you know, that bar would be set, that line would be drawn at 40 years, perhaps it would do something different. Should we go down that road? I would suggest that the court should not go down that road. On the one hand, it's engaging in pure speculation, and it would open up every sentence that was imposed before Buffer to resentencing, not just the sentences that were de facto life sentences, but any sentence below that. And there's really nowhere to draw that line. I mean, in this case it was a 40-year sentence, but I think the same logic would require a remand for a 38- or a 36-year sentence, or even a 30-year sentence. And Buffer in no way ever suggested that that was the... what it was getting after in those cases. And again, the... it's important, I think, to go back and look at what the trial court was saying here. The trial court, you know, stressed that it had reviewed all of the aggravating and mitigating circumstances. It recognized defendant's age, and it gave it mitigating weight. But on the other hand, it recognized that this was a very serious offense, and it found that defendant's actions after that offense were of an aggravating nature. It weighed all of these factors, and it determined that the 40-year sentence was, quote, the appropriate sentence. And it recognized the significance of that sentence. It recognized that that meant that the defendant would be incarcerated until the age of 57, and that he would then have an opportunity to be released and to be... to have been rehabilitated and to go on with his life. And again, that's exactly the logic this Court recognized in Buffer. This Court recognized that a sentence of 40 years or less, the very sentence that the defendant got here, is not a de facto life sentence because it does afford a meaningful opportunity for release. So again, I think from all of these circumstances and a review of the trial court's reasoning, suggests that there's no reason why this Court's subsequent decision in Buffer would give any grounds for asking the trial court to reassess its sentencing decision. And certainly, it would be inappropriate for the appellate court to do that under Rule 615B. Because again, there's been no finding of error, no finding of an abuse of discretion. If there are no further questions, we would ask this Court to reverse the appellate court's judgment and to deny the defendant's alternative request for supervisory relief. Thank you, counsel. Counsel, may I please? Good morning, Your Honors. And may it please the Court. I'm Jennifer Bontrager from the State Appellate Defender for the Ebole and Miguel Webster. Your Honors, something about this case that I think was missing from my opponent's argument is that this is an unusual case. In this case, we have a juvenile who was sentenced between the legislature codifying the Miller factors into the sentencing code and this Court's decision in Buffer which drew the line for a de facto life sentence at 40 years. Counsel, are you contending that the trial court made an error in sentencing this defendant? I'm saying that the appellate court was correct to find that there was an error that had occurred at sentencing because the error is the inherent inconsistency with the judge's findings that Miguel had rehabilitative potential. Can you articulate that for me, what the inconsistency was? Right. The judge's findings that Miguel had rehabilitative potential, that there was mitigation present, and the sentence of 40 years being a single day away from a de facto life sentence. Now, this is a judge who commented that she believed Miguel could be rehabilitated and go on with his life. Well, that was before she knew it was a day away from, a year away from whatever it is, a de facto life sentence. What was the sentencing range that was available to the judge, not based on Buffer, but was available to the judge at the time the sentence was rendered? Well, based on the judge's decision not to impose the fine. No, that's not what I'm asking. What was the sentencing range for this crime? 20 to life. Okay. And she gave him 40 years. So what was the error? So the judge appeared to be trying to give him a lenient sentence, but then this court caused a huge sea change in juvenile sentencing law and how we view sentences imposed on juveniles, and drew that line at 40 years. So the judge was imposing what she believed was a lenient sentence, which is consistent with her findings of rehabilitative potential. And then this court's decision, which came out shortly after he was sentenced, Miguel was sentenced, changed that view entirely. What was the add-on, the potential for the add-on? That was a 25-year-to-life firearm enhancement. And that was not imposed. Right. And that's one argued that the judge did impose a lenient sentence. Right. But that's no longer the case, given that the sentencing range post-Buffer was shortened essentially to 20 to 40 years without findings of irreparable depravity, which she made no such. She didn't come anywhere close, the trial judge, to finding anything like irreparable depravity in Miguel. And so we now know that the judge doesn't have to state that. That's true. But it's still, Buffer is still there as that line at 40 years. And so the judges, you know, if the judge had meant to impose a lenient sentence, had she been informed by Buffer, there is every reason to believe she would not have been quite so cruel as to impose a sentence one day away from a de facto life sentence. And it's still... Counsel, what... Sorry. What do you... Can you respond to your opponent's comments that without specifically knowing what was going to be in Buffer, the judge, the trial judge, did go through the factors that are contained in Buffer in making her sentencing decision. Can you respond to that? I mean, she certainly went through the statutory factors, the Miller factors that have been codified. The sentencing hearing complied with Miller. It's just that post-sentencing and pre-appeal, this Court decided Buffer and drew that line and wholly changed. That's not the question I asked. I'm sorry. The question is it appears from the judge's comments that she considered the factors that would later have been articulated in Buffer, and she still gave him that sentence. What's wrong with that? It's the internal inconsistency of her findings of mitigation and rehabilitation with the sentence being a day away from de facto life. That's the error that occurred. I mean, this isn't anything different than other individual, other juveniles who've been remanded for resentencing who received sentences that looked lenient. So let me ask you this. Just hypothetically, if this case got sent back and she gave him 40 years again, what would you say to that? She gave him 20 years or she gave him... No, 40. The same sentence that he got now. If it was sent back and she gave him exactly the same sentence, what would you say what would your argument be to that? I would be shocked. I don't know necessarily what argument I would be presenting. It would depend what evidence of rehabilitation Miguel could put forward, whatever additional evidence he could put forward. I simply can't. I don't know. I don't have enough evidence to know. I think it would be – I would be shocked if she imposed a 40-year sentence again once her sentence... Counsel, we've asked some questions about error. Sure. And I think what you've just said demonstrates that a 40-year sentence then or now would not be error. Rather, it certainly seemed to be arguing that the court should have been looking at different factors or weighing those factors differently. That sounds like an abuse of discretion argument and not an error argument. But then again, I'm really concerned about how we look at all of this where we are now. Under what authority does an appellate court decide there's no error, because I think they're not saying that there's an error. Under what authority does the court just say it seems only fair to the judge and the defendant to allow the judge to reconsider the sentence in light of the problem? How does the appellate court just say it seems fair, we're going to send this case back? Is that under the Constitution or our rules? Does the appellate court have the authority to say this doesn't feel right? I disagree with Your Honor's premise that the appellate court did not find error occurred. I think the appellate court's conclusion was that the internal inconsistencies with the judge's finding and the imposition of the 40 years did result in an error. And I think the appellate court under Rule 615B had the authority to remand it for resentencing. The ---- Kagan, explain to me why. Sure. Let's assume, if we could for a minute, that as you say, if I remand the court sentenced again to 40 years, that would not be error. Let's just assume we're not talking about a harm from law. Does the ---- my question is, does the appellate court have the authority under a supreme court rule to say this doesn't seem fair and send it back? I mean, I'm not aware of a case that precisely says that, and certainly that's not necessarily the language in the rule. But Rule 615B2 allows the appellate court to set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal was taken. And I think modify is a broad term that would encompass what the appellate court ordered here. And I think also the problem here is that the appellate court majority was trying to be so gentle. They were saying the trial judge was doing what she was supposed to do. Her hearing, she considered all this evidence and mitigation. She considered these factors. And much like the appellate court in De Corpo and in Ruiz, the court is saying, we don't mean to impugn the judge's conscientiousness, but the resulting sentence is still a problem, given the mitigation that's present, given the rehabilitative potential that's present, that sentence being so close to de facto life is an error that should be remedied. And it's in the interest of judicial economy to do that. Ginsburg. Isn't that the problem, that without saying that there was an error or problem in what the judge did, that, you know, I mean, I understand the niceties, but without pointing to an actual error that, you know, just isn't something that the appellate court can do? I mean, I think, again, that the appellate court did find that there was error, but they went they bent over backwards to not impugn the trial judge's conscientiousness. I mean, this Court has said that the appellate court doesn't have to use magic words like abuse of discretion in order to order a remand for something like resentencing. So, no, I don't think that's a problem. Would you fill that out again? What cases are you pointing to where this Court has said the appellate court can remand, let's say, for sentencing without finding an error, when there's, without finding an error? Sure. In abuse of discretion. Sure. The this Court in People v. O'Neill was discussing the appellate court's power under Rule 615B. The appellate court there ran a murder sentence concurrent instead of consecutively. This Court said that the appellate court was not required to use the words abuse of discretion. In ordering that, that relief, in ordering that remand, in People v. O'Neill. In that case, there was a modification? Because my question is, did they modify this sentence? They vacated and remanded for resentencing, is what the appellate court did. So, has the sentence changed at this point? Has it been modified? It's been more than modified if it's been vacated, right? I get to ask the questions. I apologize, Your Honor. I mean no disrespect. I apologize. I think vacature is a more extensive action than modification. So I would say that the sentence has been modified by being vacated. But to finish my answer to Justice Hayes, also in the briefs, right? These cases you're going to tell me about? Yes. They are in the briefs. So let me ask you another question. Certainly. I think the struggle here is, that I certainly have, is the role of the appellate court here in the sentence. And looking at 615, and the language of 615. And whether or not the language is precise enough to cover many different kinds of issues that might come before the appellate court. Now I kind of agree with you that there are cases, both in this court and the appellate court, that are, I'd say, all over the place about this. Would you have any suggestions on how this rule could be written more clearly to define what the authority of the appellate court is? Certainly it would not be, the appellate court can remand for sentencing if it seems fair. That doesn't seem to be a standard that should be applied. I mean, I would kind of advocate for a standard like that, Your Honor. But as far as re-wording the rule, or modifying the language of the rule. Maybe that's an unfair question. I don't. I don't. It's an unfair question, so I'll withdraw my unfair question. But it just seems to me that we're struggling with the language of the rule and the cases that have been all over the place. And wondering if this is a good case to, moving forward, giving better guidelines to the appellate court about what their authority is and what it is not. Sure. And perhaps, Your Honors, discussing or providing a broader definition or an explanation of what the rule means by modify. Because modify is a broad term that would seem to encompass a great deal of actions that the appellate court could take. So perhaps providing guidance on modify would be helpful. Counsel, I have- Does modify suggest some finality? You know, you talk about the fact that the sentence has been vacated. And of course, that's a temporary situation versus one of the cases you were talking about was one where you said that they, I think you said that they ran it concurrent instead of consecutive. And so that has finality to it versus a situation where it's being sent back and could potentially be changed permanently. Does that matter? I mean, I'm still not quite ready to agree that they modified this sentence. I think, I do think vacate falls within modify. Given that the appellate court also has the power to reduce a sentence, vacating it and sending it back, I do think counts as modification. But, you know, Your Honors can expand on that in this decision, perhaps. And Justice Eisenhower, you were also asking what else this court could do in considering this case. I would also urge that if Your Honors are uncomfortable with how the appellate court did it, Your Honors should exercise your supervisory authority. Perhaps reduce Miguel's sentence yourselves or otherwise remand it for resentencing. Counsel, what's the criteria for us exercising our supervisory authority in a case like this? What would have to be shown for us to do that? I mean, Your Honors, I guess I'm not aware of any case that sets forward the specific parameters of invoking it. It is obviously an extraordinary power. It is a very broad power. And to be used sparingly, wouldn't you say? I mean, we don't do that. It's hardly ever done. So what would be special about this case that would be a reason for us to use that very sparingly used power? I think perhaps what Justice Tice was noting and what we noted in the briefs is that courts are struggling with the cases that fall into this category where a juvenile was sentenced or resentenced after the Miller factors were codified into the sentencing code and the court's decision in buffer. Courts are struggling with how to review those cases, how to assess those sentences. And because sentencing is so individualized, this could be exactly what would be helpful and would be worth exercising your supervisory authority to give that guidance to lower courts for this block of cases. On that very point, that sentencing is very individualized, isn't the trial court judge in a much better position than we are today? To look at the nuances that apply to this case and figure out what sentence should be imposed based on the range of options that she has? How would we figure that out? And I think your honors can figure that out from the record. Or I mean, the trial judge being in the best place to consider that is exactly why we asked for Miguel's case to go back for resentencing in the first place, to be informed by this court's decision in buffer with that line drawing. So speaking of buffer, are you suggesting that the trial court sentence was a violation of buffer? No, I'm not suggesting it's a violation of buffer. I'm saying that if we inform her decision with buffer, it doesn't make it's internally inconsistent. Her findings of mitigation and rehabilitative potential are inconsistent with a sentence that we now know is a day away from a de facto life sentence. One last question. I asked this earlier, but I'm not sure that what exactly was the error that the trial court committed? Her findings are inconsistent with the sentence she imposed. Because the sentence she imposed is a day away from a de facto life sentence we know now. And she found significant mitigation, significant rehabilitative potential. She didn't want to impose a de facto life or something so close to a de facto life sentence. I see I'm nearly out of time. If there are no other questions from your honors, thank you very much. Thank you very much. Thank you, your honor. I would like to make a few brief points. On the question of the appellate court's authority, we cite at page 24 of our brief People v. Whitfield, where this court confronted a somewhat similar case where the appellate court, as this court described it, essentially engaged in a misguided attempt to reach a, quote, fair outcome. And that's exactly what the appellate court said it was doing here. And in the People v. Whitfield case, this court said that that was overstepping its authority. That's the type of supervisory authority that this court possesses, but the appellate court does not. I'd also like to... You think under 615B that the appellate court could have simply modified the sentence, changed it itself? No. So under 615B, the appellate court has a certain number of tools in its tool belt. It can reverse. It can modify. It can reduce a punishment. But this court's cases have been very clear that it can only exercise those powers if it finds some error or abuse of discretion. It can't simply say we want to give the trial court another chance because we think there was something unfair here. It's got to peg it to a particular error or an abuse of discretion. Well, that, as defense counsel noted, they believe the abuse of discretion is the internal inconsistency with the rehabilitative factors in giving the 40-year sentence. If the appellate court found that that was an abuse of discretion, would they have the authority themselves under 615B to reduce that sentence? Yes. If the appellate court actually found that this 40-year sentence was an abuse of discretion... Do you think they need to use those magic words? Well, I don't think the court, I don't think the appellate court has to use magic words, certainly. But I think it's important to recognize here that the appellate court thought there was a reason why it had to invoke Rule 366. And it seems to me that the reason it thought it had to invoke Rule 366 was that it was doing something that Rule 615B would not allow it to do. In other words, it was not finding an error or an abuse of discretion. And this is what the dissenting justice below pointed out. And the appellate court did not sort of respond to that and say, yes, we are finding an error or an abuse of discretion. So I think the context here is fairly clear that the appellate court thought it was doing something that 615B itself would not allow. And it was sort of, it was quite candid. It did explain later on that it thought that fairness, not only to the defendant, but to the trial court judge, warranted allowing, giving the trial court judge another chance to determine whether this was an appropriate sentence. And I do think it's important to recognize now that even now when asked, the defendant does not argue that this 40-year sentence was an abuse of discretion. And I think that that's, you know, candidly, that's, it's a wise concession. Because the sentence here, the trial court considered all of the relevant factors. This was a very serious offense. It weighed all those factors. And it came to a sensible conclusion that 40 years was the appropriate sentence. Now, whether another judge might have thought a different sentence was appropriate is not the question. The question is whether that sentence is manifestly disproportionate to the nature and seriousness of this offense. Sotomayor, are you arguing that without a finding of error or abuse of discretion, the appellate court does not have the power to act pursuant to 615? Yes, Your Honor. And I think this Court's cases, people v. Jones, people v. O'Neill, people v. Paraket, I think people v. Alexander, we cite all these cases in our brief. It's now well established that under 615b, that authority to reverse a sentence, to modify a sentence, to remand for resentencing, to reduce a sentence, all depend on some finding that the trial court made an error or abused its discretion. But the court, the appellate court must find error and then act. Well, certainly the appellate court, and I'm not saying the court has to say any magic words, but the court does have to find some error and, or at the very least, there has to be some error or abuse of discretion that would warrant that action. So they have to spell it out in some fashion so that a reviewing court like the Supreme Court would know what, why they took the action they took. Well, I certainly think it's best practice for the appellate court to explain why it's doing what it does. And I think here the court did explain why it was doing what it did, and it was based on concerns of fairness rather than error. But at the end of the day, it's not simply the case we're not stressing simply if the appellate court didn't say it was finding error or an abuse of discretion. But in addition to that, the record itself does not reveal any error or abuse of discretion. So even if the appellate court had said it was finding error, you know, our argument here would be a little different in that it wouldn't have sort of overstepped its authority, but we, our second point would still remain, which is simply that it erred in finding error or an abuse of discretion. I would briefly like to touch on this point about a buffer somehow altering the sentencing range. As I think Justice Holder White, I think you mentioned, that rests on what we now know to be a misunderstanding of the Eighth Amendment. The U.S. Supreme Court in Jones v. Mississippi recently clarified that under the Eighth Amendment, there is discretion, which is both constitutionally necessary and constitutionally sufficient. Here the trial court had the discretion to oppose a sentence of up to life imprisonment. It chose not. It exercised its discretion and chose not to. And so the relevant fact here is that the sentence complied with the Eighth Amendment, but there was no requirement that the trial court make any sort of findings before it could have sentenced the defendant to something more. It could have. It chose here not to, which is, I think, another example of it properly exercising its discretion, considering all of the relevant factors and determining that this 40-year sentence is the appropriate sentence. And the final point I would like to make is the idea that that's somehow inconsistent with buffer. I think it's just the opposite. It's fully consistent with buffer. The trial court here explained that this 40-year sentence would allow the defendant to be released at an age when he would still be young enough to be rehabilitated and go on with his life. And, again, I know I've sort of, you know, said this a number of times, but that's exactly what this court later found in buffer when it held that sentences of 40 years or less are not de facto life sentences. And they're not de facto life sentences because they do afford some meaningful opportunity for release. So, again, I see my time is coming to a close here. If there are no further questions, again, I would ask the court to reverse the appellate court's judgment and to deny the defendant's request for supervisory relief. Thank you very much, both counsel, for your argument. This case will be taken under advisory.